OHIO BAR LIABILITY INSURANCE COMPANY, Appellee,

v.

HUNT et al., Appellants.

Pollard et al., Appellants,

v.

Hunt et al., Appellees.

[Cite as *Ohio Bar Liab. Ins. Co. v. Hunt*, 152 Ohio App.3d 224, 2003-Ohio-1381.]

Court of Appeals of Ohio,
Second District, Montgomery County.

Nos. 19320 and 19321.

Decided March 21, 2003.

Neil F. Freund and Wayne E. Waite, for appellee.

Robert R. Furnier, Norman J. Frankowski II and Judi Sobecki, for appellants.

FAIN, Presiding Judge.

{¶ 1} Plaintiff-appellants Dru Pollard, individually and as Tammi Stamm's parent, and Robert Stamm ("the Pollards") appeal from a summary judgment rendered against them and in favor of defendant-appellee Ohio Bar Liability Insurance Company ("OBLIC") on their claims stemming from alleged malpractice on the part of their former attorney, Richard M. Hunt. The Pollards contend that the trial court erred by granting summary judgment to OBLIC, instead of in their favor, for three reasons. First, they claim that the trial court erred by finding that Hunt had failed to give his insurance company sufficient notice of a potential malpractice claim during the policy period to ensure coverage. Next, they argue that Hunt's assignment of his bad-faith claim against OBLIC to them was effectual under the terms of the policy. Finally, the Pollards assert that the trial court failed to allow them to respond to OBLIC's memorandum in opposition to their motion for summary judgment before rendering judgment on the cross-motions for summary judgment.

{¶ 2} We conclude that the policy's notice provisions are ambiguous on the issue of whether oral notice of a malpractice claim, which Hunt claims to have given to OBLIC, is sufficient, so that the trial court erred by granting summary judgment to OBLIC. Because there is a genuine issue of fact whether Hunt orally notified OBLIC of this claim during the policy period, the trial court did not err by refusing to grant summary judgment to the Pollards.

{¶ 3} Additionally, we conclude that the policy does not preclude Hunt's assignment of his bad-faith claim against the insurance company to the Pollards.

Nonetheless, based upon the facts in this record, we conclude that the Pollards have not set forth sufficient facts to establish the bad-faith claim. Because the trial court ruled on the cross-motions for summary judgment before the Pollards' reply was due, the Pollards should be afforded the opportunity to present evidence, in accordance with Civ. R. 56, to establish a genuine issue of material fact on the bad-faith claim. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for proceedings consistent with this opinion.

## I

{¶ 4} The Pollards fired their attorney, Hunt, after he failed to timely appeal from an adverse judgment on their daughter's personal injury negligence claim. Hunt asserts that he then called OBLIC, his malpractice carrier, to alert the company to a potential claim regarding the matter. The Pollards eventually sued Hunt for malpractice in 1996. Hunt neglected to forward a copy of the complaint against him, or to provide written notice of it, to OBLIC until four years later, when Hunt's attorney, John Smalley, wrote to OBLIC regarding the complaint. OBLIC ultimately denied coverage.

{¶ 5} Six months after Hunt and the Pollards alerted OBLIC that they would enter into a consent judgment if OBLIC failed to appear in the malpractice action between them, the trial judge in that case approved a settlement and entered judgment against Hunt for $750,000. Under the terms of this settlement, Hunt paid the Pollards only $4,000, but assigned his bad-faith claim against OBLIC to them in exchange for their agreement to satisfy the remainder of the judgment by seeking a judgment against OBLIC instead of him.

{¶ 6} The Pollards then brought this action against OBLIC under R.C. 3929.06 to enforce the consent judgment, seeking damages for OBLIC's failure to defend and to indemnify Hunt against the malpractice claim brought by the Pollards. The Pollards also asserted a bad-faith claim against the insurance company as Hunt's assignees. Meanwhile, OBLIC filed a separate action for declaratory judgment against Hunt and the Pollards. Although the parties moved to consolidate these actions, the trial court never entered an order consolidating them.[1]

{¶ 7} Both the Pollards and OBLIC moved for summary judgment. The trial court granted OBLIC's motion and denied the Pollards' motion, finding that:

---

1. The failure to have consolidated the Pollards' action against OBLIC with OBLIC's action for declaratory judgment appears to have been inadvertent. We have consolidated the appeals in these cases. Upon remand, the trial court may wish to revisit the issue of consolidation of the actions, themselves.

"The facts before the court on these motions for summary judgment are clear on lack of notice. Even if Atty. Hunt had given oral notice that was rejected by OBLIC by a writing that could be produced in court, that in itself might well be enough to satisfy the writing requirement. No suggestion is made. * * * Plaintiff Pollard's motion is overruled and the OBLIC motion for summary judgment is sustained. Written notice was required, but not given and OBLIC was well within its rights to refuse coverage. The assignment was ineffectual to assign any rights to plaintiff * * *. Other questions of bad faith, punitive damages, etc. are moot since judgment is granted OBLIC [sic] on its motion for summary judgment."

{¶ 8} From the summary judgment rendered against them, the Pollards appeal.

## II

{¶ 9} The Pollards' assignments of error are as follows:

"The trial court erred in granting summary judgment in OBLIC's favor and denying summary judgment in the Pollards' favor by ruling that OBLIC's policies do not cover the Pollards' claim because of improper notice."

"The trial court erred in granting summary judgment in OBLIC's favor and denying summary judgment in the Pollards' favor by holding that Richard Hunt's assignment of his bad faith claim against OBLIC to the Pollards was ineffectual."

"The trial court erred in deciding the cross-motions for summary judgment before the Pollards' final brief was due."

{¶ 10} These assignments of error are interrelated. They all challenge the propriety of the summary judgment awarded in favor of OBLIC.

{¶ 11} We review the appropriateness of summary judgment de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 696 N.E.2d 201. Under Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating that no genuine issue of material fact exists on the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. Once the moving party meets that burden, the nonmoving party has a reciprocal

burden of showing that a genuine issue of material fact exists to prevent summary judgment. Id. If the nonmoving party fails to meet this burden, then summary judgment is appropriate. With this standard in mind, we now address the parties' contentions.

{¶ 12} Both parties moved for summary judgment. Each party contends that the resolution of both motions involves solely an issue of law and is governed by the insurance contract. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, at paragraph one of the syllabus. The Pollards and OBLIC each contend that they are entitled to summary judgment.

{¶ 13} The Pollards first argue that there are conflicting terms found within the policy governing how an insured must provide notice of a claim to OBLIC. They claim that these terms are ambiguous and should be construed liberally in favor of coverage under *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116. Alternatively, they contend that Hunt substantially complied with the policy's notice provisions by telephoning OBLIC about the potential claim during the policy period. Finally, the Pollards assert that OBLIC waived Hunt's obligation to provide written notice by refusing to defend the underlying claim. Thus, under any of these scenarios, the Pollards contend that the trial court erred by finding that Hunt had failed to give sufficient notice to OBLIC under the policy and by granting summary judgment to the insurance company instead of to them.

{¶ 14} In response, OBLIC argues that the policy is not ambiguous, because it clearly required Hunt to provide written notice of the Pollards' claim during the policy period. Since Hunt failed to provide written notice until after the policy period expired, OBLIC is not liable. Moreover, even if Hunt provided oral notice during the policy period, which OBLIC disputes, substantial compliance with the notice provision does not ensure coverage under a claims-made policy like the one before us. Accordingly, OBLIC contends that the trial court did not err by rendering summary judgment in its favor.

{¶ 15} We agree with the Pollards that the trial court erred by awarding summary judgment to OBLIC. The notice provisions found within the policy conflict, creating an ambiguity that must be resolved in the Pollards' favor. *Scott–Pontzer*, supra. This ambiguity can be seen by examining the provisions relating to notice. The first provision states:

"NOTICE

"Except to such extent as may otherwise be provided herein, the coverage of this policy is limited to liability for only those claims that are first made against the insured and reported to the Company while the policy is in force."

{¶ 16} The next provision provides as follows:

"I. COVERAGE

"To pay on behalf of the Insured all sums which the Insured shall be legally obligated to pay as money damages because of any claim first made against the Insured and *reported to the Company during the policy period* * * *." (Emphasis added).

{¶ 17}   A few pages later, however, the policy contains the following language relating to notice of claims:

"V.   POLICY PERIOD AND TERRITORY * * *

"A Claim is first made during the Policy Period or Extended Reporting Period if:

"(a) during the Policy Period or Extended Reporting Period, the Insured shall have knowledge or become aware of any act, error, or omission which could reasonably be expected to give rise to a Claim under this policy, and shall, during the Policy Period or Extended Reporting Period, give written notice thereof to the Company in accordance with Condition VI.

"* * * A Claim shall be considered to be first made when the Company first receives written notice of the Claim or of any event which could reasonably be expected to give rise to a Claim."

{¶ 18}   And, a few more pages later, the policy provides as follows:

"VI.   NOTICE OF CLAIM OR SUIT

"Upon the Insured's becoming aware of any act, error, or omission which would reasonably be expected to be the basis of a Claim or suit covered hereby, *written notice shall be given* by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable, together with the fullest information obtainable.  If Claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative." (Emphasis added).

{¶ 19}   In the last few pages, however, the policy contains an endorsement that states:

"WHAT TO DO IN CASE OF A CLAIM

"In the event you directly or indirectly become involved in any situation which you believe may result in a claim, you should immediately report it to your OBLIC claims representative.

"Telephone: * * *

"Mailing Address: * * *."

{¶ 20}   The first provision states that coverage is limited to claims first made against an insured and reported to the company during the policy period.  This

provision does not specify that notice must be in writing. Although several other provisions do appear to require that notice be provided in a written format, the final provision instructs an insured to call or write if a claim should arise. The first and last provisions, which in the first instance do not specify the form of notice and in the second instance expressly allow for notice by telephone, conflict with the other provisions requiring written notice. Applying the rule that ambiguities be construed against the drafter of a insurance contract, we agree that this policy allows for notice of a pending claim by telephone. Accordingly, the Pollards' first assignment of error is sustained.

{¶ 21} Nonetheless, we conclude that the trial court did not err by failing to render summary judgment in favor of the Pollards. A genuine issue of material fact exists regarding whether Hunt orally notified OBLIC of the pending claim during the policy period. The insurance policy defines the policy period to mean "the period of time between the inception date shown in the Declarations and the Effective Date of termination, expiration or cancellation of coverage and specifically excludes any Extended Reporting Period or periods." Here, that period was between June 7, 1994, and June 7, 1996.

{¶ 22} The Pollards submitted an affidavit from Hunt to demonstrate that he contacted OBLIC during the policy period. Hunt avers as follows:

"At some point in June or July of 1995, I notified the Ohio Bar Liability Insurance Company, my legal malpractice insurance carrier, about the claim."

{¶ 23} The Pollards contend that OBLIC does not dispute the validity of this oral notice because OBLIC also submitted Hunt's affidavit. We disagree. OBLIC submitted several affidavits from Hunt to establish that he provided no written notice to the company—not to establish that he provided oral notice of the claim during the policy period. Moreover, OBLIC's attorney and Vice-President, Frederick Hunker averred that he had *no* notice of any pending claim until 2000:

"OBLIC *first received notice* of a claim by Drucilla Pollard against Hunt on October 11, 2000, by way of a letter from Hunt's attorney John Smalley dated October 9, 2000." (Emphasis added.)

{¶ 24} The Hunker affidavit creates a genuine issue of material fact whether Hunt orally notified OBLIC of the pending claim during the policy period. Because there is a genuine issue of material fact, the trial court did not err by denying the Pollards' motion for summary judgment.

{¶ 25} The Pollards next argue that the trial court erred by finding that Hunt's assignment of his bad-faith claim was ineffectual under the terms of the policy. The policy contains the following provision relating to assignments of interest:

"XII. ASSIGNMENT

"The interest hereunder of an insured is not assignable. If the Insured shall die or be adjudged incompetent, this policy shall cover the Insured's legal representative as the Insured with respect to liability previously incurred and covered by this policy."

{¶ 26} We conclude that this provision, also, is ambiguous regarding whether it applies to the assignment of an insured's bad-faith claim against the insurance company. "The interest hereunder of an insured" might reasonably be construed as extending only to an insured's contractual right to defense and indemnification, not to a tort claim based upon the insurer's bad faith. Arguably, bad-faith claims against insurers arise by operation of law, not by virtue of any contractual provision obligating the insurer. Accordingly, we construe this provision in favor of the insured and conclude that it does not bar assignment of Hunt's bad-faith claim against OBLIC.

{¶ 27} In anticipation of a possible conclusion that the assignment is valid, OBLIC claims that the trial court nevertheless properly rendered summary judgment in its favor on the bad-faith claim because Hunt was never exposed to excess liability, as required by law to assert a successful bad-faith claim. With respect to this argument, OBLIC argues that unless the insured has been exposed to an excess judgment by the unreasonable actions of the insurance company, the insured has no claim for bad faith. In support of this contention, the insurance company directs our attention to *Romstadt v. Allstate Ins. Co.* (N.D.Ohio 1994), 844 F.Supp. 361; *Doser v. Middlesex Mut. Ins. Co.* (2d Dist.1980), 101 Cal.App.3d 883, 162 Cal.Rptr. 115; and *Smith v. State Farm Mut. Auto. Ins. Co.* (1st Dist.1992), 5 Cal.App. 4th 1104, 7 Cal.Rptr.2d 131.

{¶ 28} We disagree. Under Ohio law, an insurer has a duty to act in good faith in processing and paying valid claims. *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 276, 6 OBR 337, 452 N.E.2d 1315. Therefore, an insured may bring a cause of action in tort against the insurer for breach of that duty. Id. To successfully assert a bad-faith claim, the insured must show that the insurer failed to exercise good faith in processing a claim by refusing to pay or to defend the claim, when not based upon "circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397. OBLIC has not cited any Ohio authority, nor have we found any, requiring the existence of an excess judgment as a predicate for a cause of action for bad faith.

{¶ 29} It is true that some courts have concluded that an excess judgment must be in existence before a bad-faith cause of action can be stated. OBLIC cites *Romstadt, Doser,* and *Smith,* each of which stand for the proposition that an

insured may not be sued for bad-faith refusal to settle unless an excess judgment has been entered. But each presupposes that the insurer's breach of implied duties of good faith and fair dealing are not complete until an excess judgment has been entered.

{¶ 30} We disagree with this proposition. The Ohio Supreme Court has not restricted bad-faith claims in this manner, and we conclude that it would be unwise to do so. Cf. *Camelot by the Bay Condo. Owners' Assn. v. Scottsdale Ins. Co.* (2d Dist.1994), 27 Cal.App.4th 33, 32 Cal.Rptr.2d 354. By applying this logic, insurers could, with impunity, act as unreasonably as they choose, leaving an insured to cover the costs of defense, so long as no excess judgment is ultimately recovered. This would do little to facilitate settlement, since an insured would often be without the means to offer what the tort victim reasonably demands in settlement. Permitting an insurer to act unreasonably with impunity would also lead to further inequality in the bargaining power that an insurer holds over its insured by virtue of superior resources.

{¶ 31} The potential for a bad-faith claim acts as an incentive for insurers to act in a reasonable manner in defending and settling claims. Those insurers who fail to do so act at their own peril and will not be protected simply because an insured, forced unreasonably to provide for his own defense, avoids a judgment in excess of policy limits.

{¶ 32} Nevertheless, on the state of this record, we conclude that the Pollards have failed to establish the existence of a genuine factual dispute on the issue of bad faith. In their Complaint, the Pollards state:

"OBLIC, by its actions in denying coverage under the policy and refusing to indemnify Hunt, breached its duty to act in good faith as Hunt's insurer."

{¶ 33} The basis of the bad-faith claim appears to be OBLIC's failure to acknowledge coverage, which it did based upon its reading of an ambiguous notice provision. But bad faith is not shown by a mere breach of a contractual duty, nor can it be shown by an insurance company's mistaken actions relating to an unclear contractual provision. *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464. Accordingly, under these facts, the trial court would not err by awarding summary judgment for OBLIC on the Pollards' bad-faith claim—albeit for grounds other than those advanced in the trial court's decision—because no reasonable trier of fact could conclude that OBLIC acted unreasonably in denying Hunt's claim. *Cook v. Cincinnati* (1995), 103 Ohio App.3d 80, 658 N.E.2d 814 (a trial court can be right for the wrong reason, and when this happens, summary judgment will be affirmed).

{¶ 34} Ordinarily, this would end our discussion relating to this assignment of error. However, the Pollards have also claimed in their third assignment

of error that they were prejudiced because the trial court ruled on the cross-motions for summary judgment prematurely, before their final reply brief to OBLIC's memorandum in opposition to their motion for summary judgment was due. If this is true, then the Pollards will have a second chance to present evidence, in accordance with Civ. R. 56, to establish a genuine issue of material fact on the bad-faith issue.

{¶ 35} Courts are required to adhere strictly to Civ.R. 56 before ruling on a motion for summary judgment, because summary judgment ends litigation without giving the losing party the benefit of a trial. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138. Here, by agreement of the parties, the trial court extended OBLIC's time to respond to the Pollards' motion for summary judgment up to and including March 18, 2002, and further ordered that the Pollards would have 14 days thereafter to respond. On March 18, 2002, OBLIC filed its motion. For reasons that we cannot discern, the trial court proceeded to rule on the cross-motions for summary judgment before the 14–day response period had run, thereby depriving the Pollards of 4 additional days in which to respond.

### III

{¶ 37} All of the Pollards' assignments of error having been sustained, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

FREDERICK N. YOUNG, J., concurs.

GRADY, J., dissents.

GRADY, Judge, dissenting.

{¶ 38} I respectfully dissent from the majority's decision because I find no ambiguity in the terms of the policy with respect to the insured's duty to provide the insurer written notice of a claim or prospective claim.

{¶ 39} As with any written contract, which is presumed to evidence the intention of the parties, a policy of insurance is ambiguous if any of its terms creating their respective rights and duties is reasonably subject to different meanings in that regard. Then, as a standard rule of construction, the policy is construed most strongly in favor of the insured and most strongly against the insurer that drafted it. *Gibbons v. Metro. Life Ins. Co.* (1939), 135 Ohio St. 481,

14 O.O. 387, 21 N.E.2d 588; *Ohio Farmers Ins. Co. v. Wright* (1969), 17 Ohio St.2d 73, 46 O.O.2d 404, 246 N.E.2d 552.

{¶ 40}  This rule of construction does not apply to determine whether an ambiguity exists, however.  There is no ambiguity if the term or terms concerned are expressed with a clarity reasonably sufficient to express the plain meaning of the parties concerning their intent.  The court may not then refine those terms so exquisitely that an ambiguity is inevitable.  Nor may the court consider the term in isolation from other of the policy's terms which affect the same matter.  A contract of insurance must be construed as a whole, and all its parts must be construed to arrive at the meaning that will effectuate to the fullest intent what the parties intended.

{¶ 41}  Here, the relevant provisions of the policy impose a clear duty on the insured to "report" a claim to the insurer and to make that report by providing "written notice" of the claim to the insurer or any of its agents.  Those provisions do not in any way suggest that giving oral notice satisfies the insured's duty to report a claim.  The fact that the company's telephone number is stated along with its mailing address is insufficient to create a reasonable alternative meaning that the report may be made by telephone or some other oral communication.  Considered as a whole, the policy plainly and unambiguously requires written notice.

{¶ 42}  I would affirm.