OPINION
{¶ 1} Plaintiffs-appellants, Meadowwood Manor, Inc. ("Meadowwood"), John C. Crout, and Crout Properties, Inc., appeal from the June 1, 2004 judgment of the Brown County Court of Common Pleas granting partial summary judgment in favor of defendant-appellee, the Ohio Department of Job and Family Services ("ODJFS"). For the reasons outlined below, we affirm the decision of the trial court.
 {¶ 2} Meadowwood is an Ohio corporation which operates a nursing facility ("NF") in Brown County known as MeadowWood Nursing Home. Meadowwood operates the NF *Page 2 
under a Medicaid provider agreement with ODJFS. John C. Crout owned the title and assets of Meadowwood until December 1999 when he transferred ownership from himself to Crout Properties, Ltd. It is undisputed that both before and after the transfer of assets, Meadowwood was the provider operating the NF. In March 2000, Meadowwood filed a cost report, reporting a change to their provider agreement and requesting an increase in the Medicaid per diem reimbursement rate. ODJFS denied the request, explaining that no change in provider had occurred and the original provider agreement remained in place.
 {¶ 3} Appellants filed a complaint for declaratory and injunctive relief against ODJFS, as well as the Ohio Department of Health and various officials and employees thereof. Count Five of the complaint charged ODJFS with breach of the provider agreement. Appellants alleged that Meadowwood was entitled to a change of the provider agreement (and the corresponding increase in its Medicaid reimbursement rate) pursuant to Ohio Adm. Code 5101:3-3-51.6(B)(3). The parties filed cross-motions for partial summary judgment on that issue and the trial court concluded that no change of the provider agreement was required. The court found that the language of Ohio Adm. Code 5101:3-3-51.6(B)(3) to which appellants referred was facially ambiguous. The court explained that reasonable interpretation of the administrative code demonstrated that a change in provider had not occurred and therefore no change in the provider agreement was required. By a judgment entry dated June 1, 2004, the court ruled in favor of ODJFS, granting their motion for partial summary judgment and dismissing appellants' claim.
 {¶ 4} The remaining four counts of appellants' complaint were otherwise resolved in August 2006 and appellants filed this appeal from the court's judgment entry granting partial summary judgment to ODJFS. Appellants raise the following assignment of error for our review:
 {¶ 5} "THE COMMON PLEAS COURT ERRED IN GRANTING DEFENDANT- *Page 3 
APPELLEE, OHIO DEPARTMENT OF JOB AND FAMILY SERVICES' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT."
 {¶ 6} Appellants argue that the plain language of Ohio Adm. Code5101:3-3-51.6(B)(3) requires a new provider agreement, entitling them to an increase in the per diem Medicaid reimbursement rate. Appellant's claim that the administrative code is not ambiguous and that the trial court erred in ignoring the plain language of the rule under the guise of statutory interpretation.
 {¶ 7} Summary judgment is appropriate only where (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion, adverse to the nonmoving party, when construing the evidence in a light most favorable to the non-moving party. Civ.R. 56.Pierce v. Brown Publishing Co., Fayette App. No. CA2006-07-027,2007-Ohio-1657. A trial court's decision awarding summary judgment is reviewed de novo on appeal. Id. Both appellants and ODJFS agree that there are no factual disputes, as evidenced by their cross-motions for summary judgment. The issue on appeal is whether the trial court properly determined that the language of Ohio Adm. Code5101:3-3-51.6(B)(3) was ambiguous and whether it properly granted summary judgment to ODJFS based on its interpretation of that section. We review these issues independently and without deference to the findings of the trial court.
 {¶ 8} The version of Ohio Adm. Code 5101:3-3-51.6 effective at the relevant time, provided that:
 {¶ 9} "(B) The following circumstances shall result in a change in Medicaid provider agreement:
 {¶ 10} "(1) A sale of a NF; or
 {¶ 11} "(2) In the case of a NF operating as a partnership, the removal, addition, or substitution of a partner, unless the partners expressly agree-otherwise, as permitted by *Page 4 
applicable state law; or
 {¶ 12} "(3) In the case of a sole proprietorship, the transfer of title and property to another party; or
 {¶ 13} "(4) In the case of leases, an initial lease or a new lease as set forth under rule 5101:3-3-51.5 of the Administrative Code; or
 {¶ 14} "(5) In the case of a corporation, the merger of the provider corporation into another corporation or the consolidation of two or more corporations resulting in the creation of a new corporation."[1]
 {¶ 15} Ohio Adm. Code 5101:3-3-01 defines a "provider" as "a person or government entity that operates a NF * * * under a provider agreement."
 {¶ 16} It is undisputed that Meadowwood is the provider operating the NF in question, and that no change of provider has occurred. However, appellants assert that, pursuant to the plain language of Ohio Adm. Code5101:3-3-51.6(B)(3), a new provider agreement was required when Crout, as a sole proprietor, transferred the title and property of Meadowwood to Crout Properties, Ltd. In opposition, ODJFS argues that the language of the administrative code section is ambiguous. ODJFS asserts that the only reasonable interpretation of that section would require a change of provider agreement only under circumstances in which the provider (in this case, Meadowwood) is itself operating as a sole proprietor. Because the sole proprietor in this case was Crout, not Meadowwood, ODJFS argues that no change of provider agreement (and therefore no change in the Medicaid reimbursement rate) was required.
 {¶ 17} The trial court agreed with ODJFS. The court found that the plain language of Ohio Adm. Code 5101:3-3-51.6(B)(3) was unclear as to whether it applied only to providers *Page 5 
operating as sole proprietors or if the section would also apply to the owner of such an entity, such as Crout. The court then went on to interpret the section and found that the only reasonable interpretation of Ohio Adm. Code 5101:3-3-51.6(B)(3) allowed for application of the provision only where the provider is itself acting as a sole proprietorship. Therefore, the court found, Crout's transfer of title and property to Crout Properties, Ltd. did not trigger a change of provider agreement under the administrative code.
 {¶ 18} We must therefore review whether the court properly found this administrative code section to be ambiguous and, in turn, whether it properly granted ODJFS's motion for partial summary judgment based on its interpretation of that section. We must first determine whether the plain language of Ohio Adm. Code 5105:3-3-51.6(B)(3) is ambiguous.
 {¶ 19} "No clear standard has evolved to determine the level of lucidity necessary for a writing to be unambiguous. * * * When confronted with allegations of ambiguity, a court is to objectively and thoroughly examine the writing to attempt to ascertain its meaning. * * * Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed." State v. Porterfield,106 Ohio St.3d 5, 2005-Ohio-3095, ¶ 11. The fact that language may be susceptible to more than one interpretation does not necessarily render a provision ambiguous. See id. However, words in a statute do not exist in a vacuum. D.A.B.E., Inc. v. Toledo-Lucas County Board of Health,96 Ohio St.3d 250, 2002-Ohio-4172, ¶ 19. A court must give effect to all parts of a statute and consider, in context, all of the words used, giving effect to the overall statutory scheme. See id. These maxims apply equally to administrative regulations. See State ex rel. BrilliantElectric Sign Co. v. Industrial Comm. (1979), 57 Ohio St.2d 51, 54.
 {¶ 20} In reviewing the administrative code section at issue in this case, we agree with the trial court that the provision is facially ambiguous when viewed in context with the other provisions of that same section. Specifically, subsections (B) (1 ), (B)(2), and (B)(4) all refer to *Page 6 
the "NF," "the NF `operating as a partnership,'" or the "provider corporation." However, in subsection (B)(3), it is not clear whether the "sole proprietorship" to which it refers includes any entity in ownership or if it, too, refers to a NF provider operating as a soleproprietor. Appellants in this case argue that the mere suggestion of an alternative interpretation, such as the one offered by appellees, is insufficient to create an ambiguity which would perm it the court to ignore the plain language of the administrative code. However, it is clear that, in the context of the whole of the statutory scheme, the language of subsection (B)(3) is unclear. We therefore find that the trial court properly found this section to be ambiguous and open for interpretation.
 {¶ 21} Having determined that Ohio Adm. Code 5101:3-3-51.6(B)(3) is ambiguous, we turn to interpretation of that section. "If the construction and interpretation of statutory language reveals the statute to be facially ambiguous, it is the function of the courts to construe the statutory language to effect a just and reasonable result."Burdge v. Kerasotes Showplace Theatres, LLC, Butler App. No. CA2006-02-023, 2006-Ohio-4560, ¶ 35, citing Gulf Oil Corp. v.Kosydar (1975), 44 Ohio St.2d 208. We are also mindful that a reviewing court must afford due deference to an agency's interpretation of its own rules where that construction proves reasonable. See Northwestern OhioBuilding Construction Trades Counsel v. Conrad, 92 Ohio St.3d 282,287-289, 2001-Ohio-190. When statutory language is found to be ambiguous, a court may consider statutes on the same or similar subjects in order to determine legislative intent. R.C. 1.49(D). In fact, statutes relating to the same general subject matter must be read in pari materia and courts should construe statutes relating to the same subject matter as consistent rather than inconsistent. Id. at ¶ 37. Further, R.C. 5111.02(B), in effect at the relevant time, delegated rule-making authority to the ODJFS and required that such rules "that pertain to nursing facilities * * * be consistent with sections 5111.20
to 5111.33 of the Revised Code." *Page 7 
 {¶ 22} The administrative provision in question, 5101:3-3-51.6, purports to amplify R.C. 5111.25, which regulates per resident per day rates for reasonable capital costs of nursing facilities. Under R.C.5111.25(B)(4)(5), the manner for calculating the capital cost basis of NF assets can be affected when a provider transfers an interest in a NF. (Emphasis added.) In light of this language, to construe the administrative code section at issue in the way appellants suggest would be inconsistent with the statutory provisions which it purports to amplify. Further, such a construction would be inconsistent with the language used in subsections (B)(2) and (B)(5) of that same administrative code section, wherein changes to the provider entity have the effect of triggering a new provider agreement.
 {¶ 23} Additionally, while appellants argue that interpretation of subsection (B)(3) in the manner suggested by appellees would be incompatible with the federal regulation on the same subject, we do not find this to be true. Section 489.18, Title 42, C.F.R., the federal regulation governing the "Change of ownership or leasing; Effect on provider agreement" for Medicaid facilities, uses language similar to the Ohio administrative code. Like the Ohio code, the subsection referring to "sole proprietorships" does not specify the type of entity to which it refers. However, also similar to the Ohio code, the overall scheme of the regulation refers to changes made to the makeup of the provider entity as those affecting the provider agreement. The regulation refers to changes to "the provider corporation," and changes to the lease of the "provider facility," as resulting in a "change of ownership." Additionally, subsection (b) requires a "provider who is contemplating or negotiating a change of ownership" to notify the appropriate authority. (Emphasis added.) We find that the federal regulation is further support for the interpretation urged by appellees and ultimately adopted by the trial court.
 {¶ 24} We therefore find the trial court properly interpreted Ohio Adm. Code 5101:3-3-51.6(B)(3) to apply only under circumstances in which a provider, acting as a sole proprietor, *Page 8 
transfers the assets of the NF to another party. It is clear that other statutory language on this same subject refers to changes to, or actions by, the provider as affecting the status of the provider agreement. The overall scheme underlying the statutes and regulations on this subject reflects that, when the provider changes in form or substance, so must the provider agreement. There is no language within these related sections to suggest that changes to the independent entity owning the provider facility affects the provider agreement between the actual provider and ODJFS. Therefore, we find that the trial court properly interpreted the language of subsection (B)(3).
 {¶ 25} Consequently, the trial court properly granted partial summary judgment to appellees. There is nothing in the provider agreement which requires ODJFS to react to the activities of Crout or permits them to regulate his activity. Meadowwood was the provider operating the NF in question both before and after the transfer of assets. Further, it was Meadowwood that was operating under the provider agreement with ODJFS and bound to its terms, not Crout. No new provider agreement was required and summary judgment was appropriate.
 {¶ 26} Accordingly, appellants' sole assignment of error is overruled.
 {¶ 27} We note that appellants raise arguments in their reply brief which were not raised or argued in their original brief on appeal. First, appellants assert, without reference to supporting case law, that the Joint Committee on Agency Rule Review (JCARR) presumably found the plain language of this subsection to be in harmony with legislative intent and that this court must do the same. However this argument was not raised in appellant's original appellate brief and appellees were therefore deprived of an opportunity to respond. We therefore decline to address this argument on appeal. Appellants also argue that both ODJFS and the trial court failed to address an allegation in the original complaint which asserted that ODJFS treated similarly situated applicants disparately in light of the alleged *Page 9 
ambiguity. However, no argument with regard to disparate treatment was raised in appellants' motion for summary judgment against ODJFS. Appellants also failed to raise this argument in their response to ODJFS's cross-motion for summary judgment. And again, this argument was not raised as an assignment of error on appeal and was argued for the first time in appellants' reply brief. Accordingly, we decline to address this argument for the first time on appeal.
 {¶ 28} Judgment affirmed.
WALSH and POWELL, JJ., concur.
[1] The ODJFS repealed Ohio Adm. Code 5101:3-3-51.6 effective February 2, 2006. The regulation's repeal does not, however, resolve the issue between parties. *Page 1