**REDLIN et al., Appellees,**

v.

**RATH, Appellant.**

[Cite as Redlin v. Rath, 171 Ohio App.3d 717, 2007-Ohio-2540.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–06–1144.

Decided May 25, 2007.

718

Richard L. Emery and Martin J. Holmes Jr., for appellees.

Matthew J. Smith, Thomas F. Glassman, Peter C. Munger, and Marshall W. Guerin, for appellant.

Osowik, Judge.

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, following a jury trial, in which the trial court sua sponte vacated a judgment in favor of appellant, Theodore D. Rath, and ordered a new trial. For the reasons that follow, we hereby reverse the trial court's judgment.

{¶ 2} The relevant, undisputed facts are as follows. In August 2002, appellee, Robin L. Redlin,[1] and Rath were involved in an automobile accident on Secor Road in Toledo, Ohio. On January 29, 2004, Redlin filed the complaint herein against Rath, seeking damages for injuries she allegedly incurred as a result of the accident.

{¶ 3} The matter was tried to a jury on December 5, 6, and 7, 2005, after which a verdict was returned in favor of Rath. On March 27, 2006, the trial court entered judgment in Rath's favor. However, on April 10, 2006, the trial court, acting on its own initiative, filed a decision and journal entry, in which it vacated the March 27 judgment entry and ordered a new trial. Rath filed a notice of appeal from that judgment on April 25, 2006.

{¶ 4} On appeal, Rath sets forth the following as his sole assignment of error:

{¶ 5} "The trial court erred in sua sponte vacating the unanimous jury verdict and final judgment entry, and ordering a new trial."

---

1. Both Robin Redlin and her husband, Greg Redlin, were plaintiffs in the trial court. However, in the interest of clarity, we will refer only to Robin Redlin as the "plaintiff," and will identify Greg Redlin by name in this decision and judgment entry. Similarly, in the interest of clarity, the term "appellee" will be used throughout this decision and judgment entry to refer to Robin Redlin.

{¶ 6} In his appellate brief, Rath sets forth several arguments in support of his assignment of error. Because it presents a threshold issue, we will first address Rath's assertion that the trial court abused its discretion, and thereby denied him due process, by sua sponte ordering a new trial without first giving the parties notice and an opportunity to be heard as required in the second paragraph of Civ.R. 59(D).

{¶ 7} Civ.R. 59(D) states:

{¶ 8} "Not later than fourteen days after entry of judgment the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party.

{¶ 9} "The court may also grant a motion for a new trial, timely served by a party, for a reason not stated in the party's motion. In such case the court shall give the parties notice and an opportunity to be heard on the matter. The court shall specify the grounds for new trial in the order."

{¶ 10} In support of his argument, appellant cites *Musca v. Chagrin Falls* (1981), 3 Ohio App.3d 192, 3 OBR 219, 444 N.E.2d 475. The dispute in *Musca* centered around liability for an unpaid water bill in the amount of $11,594.93. Initially, Musca, a local business owner, requested an injunction prohibiting Chagrin Falls's city water department from obtaining a lien on her business and adding the unpaid balance to her tax bill. After holding a hearing, the trial court enjoined the city water department's efforts to collect the water bill. However, 13 days later, the trial court sua sponte vacated its judgment entry and denied Musca's request for injunctive relief without notice or a hearing. Musca filed a timely notice of appeal.

{¶ 11} On appeal, the Eighth District Court of Appeals analyzed the language of Civ.R. 59(D) as follows:

{¶ 12} "Each paragraph in (D) provides a trial judge sua sponte authority to grant a new trial but it is not clear that the procedures for notice and hearing and the specification of grounds provided in the second paragraph also apply to the first. However, there appears to be no reason why the draftsmen should intend a procedural difference when sua sponte authority is exercised under the first rather than the second provision. On the other hand there are obvious reasons for intending notice and hearing for both.

{¶ 13} "The ambiguity is resolved if Civ.R. 59(D) is read as though the last two sentences of the second paragraph were part of a third paragraph providing:

{¶ 14} " 'In such case[s][2] the court shall give the parties notice and an opportunity to be heard on the matter. The court shall specify the grounds for [the] new trial.' " (Footnote sic.)

{¶ 15} Generally, in deciding whether the language employed in a statute, or, in this case, a Civil Rule, is ambiguous, a court is required " 'to objectively and thoroughly examine the writing to attempt to ascertain its meaning. * * * Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed.' " *Meadowwood Manor, Inc. v. Ohio Dept. of Health,* 12th Dist. No. 2006–08–010, 2007-Ohio-2067, 2007 WL 1248183, ¶ 19, quoting *State v. Porterfield,* 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, ¶ 11. In so doing, courts must keep in mind that "[susceptibility] to more than one interpretation does not necessarily render a provision ambiguous." Id.

{¶ 16} After thoroughly reviewing the language employed in Civ.R. 59(D) we find that although the rule is susceptible to more than one interpretation, it is not ambiguous on its face. To the contrary, it is quite possible to conclude that the requirement for notice and a hearing is imposed only in cases where the trial court grants a timely motion for a new trial on grounds other than those raised in a motion for a new trial. This interpretation is reasonable, particularly since the first paragraph of Civ.R. 59(D) imposes a relatively short 14–day limitation on the trial court's authority to sua sponte order a new trial. Accordingly, we disagree with the Eighth District Appellate Court's conclusion that notice and a hearing are required when the trial court sua sponte orders a new trial, and we refuse to impose such a requirement in this case. Rath's argument that notice and a hearing are required is, therefore, without merit.

{¶ 17} Having resolved the threshold issue of due process, we now turn to Rath's assertion that the trial court erred by ordering a new trial based on defense counsel's alleged misconduct. In support, Rath argues that his defense counsel's conduct "was neither inflammatory, prejudicial, nor in any way had a negative impact on the jury"; and neither the trial court nor plaintiff's counsel objected to defense counsel's actions at trial.

{¶ 18} We note initially that a reviewing court may reverse a trial court's order for a new trial only if in ordering the new trial, the trial court had abused its discretion. *Antal v. Olde Worlde Prods.* (1984), 9 Ohio St.3d 144, 145, 9 OBR 392, 459 N.E.2d 223. An abuse of discretion connotes more than a mere error of law or judgment; it requires a finding that the trial court's decision was

2. "The 's' is added. To effect the resolution of the ambiguity all that needs to be done is to pluralize the word 'case.' "

unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. This "high abuse-of-discretion standard" is necessary because the trial court's ruling may require an evaluation of factors that are not readily apparent upon review of the trial court's record. *McLeod v. Mt. Sinai Med. Ctr.*, 166 Ohio App.3d 647, 2006-Ohio-2206, 852 N.E.2d 1235, ¶ 27, citing *Schlundt v. Wank* (Apr. 17, 1997), Cuyahoga App. No. 70978, 1997 WL 186830. Nevertheless, "so long as the verdict is supported by substantial, competent, credible evidence, the jury verdict is presumed to be correct and the trial court must refrain from granting a new trial." Id.

{¶ 19} As set forth above, pursuant to Civ.R. 59(D), the trial court may sua sponte order a new trial "for any reason for which it might have granted a new trial on motion of a party." Civ.R. 59(A) provides the following relevant bases upon which a party may seek a new trial:

{¶ 20} "(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;

{¶ 21} "(2) Misconduct of the jury or prevailing party;

{¶ 22} " * * *

{¶ 23} "(6) The judgment is not sustained by the weight of the evidence; * * *;

{¶ 24} "(7) The judgment is contrary to law;

{¶ 25} " * * *

{¶ 26} "In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown."

{¶ 27} In its judgment entry, the trial court found, after reviewing "notes of the trial, the file, the pleadings and the closing argument of Defense Counsel," that defense counsel's conduct was "inflammatory, prejudicial, and had a substantial negative impact on the jury's decision." The trial court concluded that the jury's verdict was "contrary to law." In support of its conclusion, the trial court cited the following specific instances of defense counsel's alleged misconduct:

{¶ 28} "During Jury examination Defense Counsel informed the potential members that neither he nor Plaintiff's counsel wanted an unbiased panel. This in effect called Plaintiff's Counsel's remarks into question since he [plaintiff's counsel] had repeatedly asked the potential jurors if they could treat both sides fairly. Furthermore, it informed the jury [that defense counsel] was not interested in a fair and impartial adjudication. This is unacceptable to the Court and perhaps unethical.

{¶ 29} "Defense Counsel often inserted prejudicial remarks during the trial. On one occasion during the trial Defense Counsel blurted out, essentially testify-

ing, that 'he was glad to finally see the pictures' offered by the Plaintiff. He either had the pictures or could have had them in discovery. This 'testimony' and others like it was designed to prejudice the jury against the Plaintiffs.

{¶ 30} "Most egregious of all was counsel's closing argument. Prior to the commencement of the trial Defense counsel moved to exclude the police report concerning the automobile accident which was the basis for the Plaintiff's case. That motion was granted, yet in closing argument [defense counsel] stated that the Plaintiff should have called the police officers who made the report as witnesses during the trial. The inference being that the Plaintiffs' [sic] were trying to hide something from the jury.  * * * [Defense counsel] further inferred in his argument, without any basis in evidence, that the Court, counsel for the plaintiff and the system were prejudiced against him and his client. Finally, his uses of inflammatory remarks like 'money grab' are so offensive as to shock the conscious and should not be condoned."

{¶ 31} As to counsel's comments during voir dire, a review of the trial transcript shows that the trial court stated: "What we're looking for is we want to get a jury that's just like the one you'd like to have if you had a case. People that are fair and impartial * * *." Thereafter, plaintiff's counsel stated: "[Defense counsel] and myself [want] a jury that we both feel can be fair to the plaintiff and can be fair to the defense." Defense counsel later told the jury that "we all want fair jurors and we all want you to independently consider the evidence, but there's two sides here, and they're trying to pull you your way or our way or his way." No objection was made by either side as to these comments, and the court made no attempt to correct either party after these remarks were made to the jury.

{¶ 32} As to defense counsel's comments regarding pictures of the parties' respective vehicles, the trial transcript shows that Redlin referred to photographs of her vehicle during her direct testimony; however, her attorney did not enter the photographs into evidence at that time. On cross-examination, defense counsel showed Redlin photographs of the damage to Rath's vehicle, which were entered into evidence. Later, on direct examination, plaintiff's counsel showed Redlin's son, Matthew, and her husband, Greg, pictures of the damage to Redlin's vehicle. Later, on cross-examination of Greg Redlin, defense counsel commented: "[We] finally got some photographs from you folks." No objection was made to defense counsel's comments, and the trial court made no independent attempt to intervene during Greg Redlin's cross-examination.

{¶ 33} At the close of all the evidence, the trial court conferred with counsel for both parties outside the hearing of the jury, during which plaintiff's counsel made a motion for a directed verdict. Before denying the motion the trial court stated:

{¶ 34} "Would I find liability if called upon, I think I probably would in this case, I think I probably would, but you know what, the point is not what I would do, the point is could reasonable minds come to a different conclusion and I think they could."

{¶ 35} Thereafter, a discussion regarding the admission of evidence took place, during which the following exchange occurred:

{¶ 36} "The Court: You know it's going to be an interesting case. You're a good man, [Defense counsel].

{¶ 37} "Defense counsel: I'm glad that one's on the record. [Plaintiff's counsel is] a good man too.

{¶ 38} "The Court: It's your job, why would I get—You can't take this personally, it's your job to do these things. * * * I mean that's what you do, I'm not going to get personally involved in that. That's your job. I don't have any problem with it."

{¶ 39} After the above exchange, closing remarks were made to the jury. The trial transcript shows that during closing, plaintiff's counsel asked the jury to return a verdict of $50,000 for Robin Redlin and $10,000 for her husband, Greg Redlin. Defense counsel told the jury during closing that the case was a "money grabber," and further stated that plaintiffs' counsel was "shooting high hoping you're going to land high." Defense counsel also asked: "Where are the police officers? I don't recall them testifying * * * We didn't hear from the police officers. This gentleman [Greg Redlin is] a police officer. We didn't * * * hear any body man come in here and talk about what was repaired on the car." He then referred to Redlin's photographic exhibits by saying: "I about jumped out of my seat yesterday when they finally stood up and gave you their photographs, maybe you'll remember, funny how they didn't want to talk about their photographs until they absolutely had to."

{¶ 40} In addition, defense counsel stated: "I told you when we started, [plaintiff's] counsel stood here in jury selection and said he wanted a fair and impartial jury. I told you that's baloney, he wants things [sic] that see things his way, I want a jury that sees things our way. I'd like you to have sympathy, I'd like you to have heart. He's a nice man. They have been playing the sympathy card since we started. But you know what the judge is going to tell us and tell you?—No sympathy. You use logic." Defense counsel also stated: "Money grab, folks, excessive care and treatment, unnecessary care and treatment * * *. [Plaintiff's counsel] stood here and told you he wanted you to be fair. Guess what? We're hoping that you're fair."

{¶ 41} No objections were made to defense counsel's closing remarks, either by the trial court or plaintiff's counsel. In rebuttal, plaintiff's counsel asked the jury

to not allow defense counsel to "muddy the water." He then agreed with defense counsel that "[I]t's about money, it is."

{¶ 42} In addition to the above, the trial transcript contains the testimony of Redlin, who stated that at the time of the accident, she was employed cleaning houses. Redlin further stated that immediately following the accident, she was able to drive her vehicle to work, where she cleaned a private residence that day, as scheduled. As to the extent of her injuries, Redlin testified that several days after the accident, she developed pain in her body and suffered depression and blinding headaches, and she was admitted to the hospital for several days. After her release from the hospital, Redlin sought treatment from several doctors and a chiropractor, who were able to relieve her symptoms. The jury also heard testimony from Redlin's treating physician, who stated that she had pain as a result of the accident. In addition, Redlin's husband, Greg, and her son, Matthew, testified that Redlin suffered from headaches and depression following the accident.

{¶ 43} The transcript also contains Rath's testimony, in which he stated that Redlin was in no apparent pain immediately after the accident and that neither party's vehicle sustained major damage. In addition, the jury heard the video deposition of Rath's medical expert who testified that although Redlin may have suffered from headaches as a result of the accident, the treatment she received in 2003 and 2004 was not for a medical condition related to the accident. As set forth above, the jury also heard evidence as to the monetary value of Redlin's medical treatment, pain and suffering, as well as the value of the loss of consortium suffered by her husband.

{¶ 44} It is well-settled that the law does not prohibit trial counsel from zealously representing a client. *McLeod v. Mt. Sinai Med. Ctr.*, 166 Ohio App.3d 647, 2006-Ohio-2206, 852 N.E.2d 1235, ¶ 30. Furthermore, "trial counsel should be accorded wide latitude in opening and closing arguments." Id., citing *Presley v. Hammack*, Jefferson App. No. 02 JE 28, 2003-Ohio-3280, 2003 WL 21448228. Only in cases " '[w]here gross and abusive conduct occurs, is the trial court bound, sua sponte, to correct the prejudicial effect of counsel's misconduct.' " (Emphasis omitted.) *Pesek v. Univ. Neurologists Assn., Inc.* (2000), 87 Ohio St.3d 495, 501, 721 N.E.2d 1011, quoting *Snyder v. Stanford* (1968), 15 Ohio St.2d 31, 37, 44 O.O.2d 18, 238 N.E.2d 563, superceded by rule on other grounds as stated in *King v. Branch Motors Express Co.* (1980), 70 Ohio App.2d 190, 197, 24 O.O.3d 250, 435 N.E.2d 1124. "Moreover, counsel's behavior has to be of such a reprehensible and heinous nature that it constitutes prejudice before a court can reverse a judgment because of the behavior." *McLeod* at ¶ 31, citing *Hunt v. Crossroads Psych. & Psychological Ctr.* (Dec. 6, 2001), Cuyahoga App. No. 79120,

2001 WL 1558574; *Kubiszak v. Rini's Supermarket* (1991), 77 Ohio App.3d 679, 688, 603 N.E.2d 308.

{¶ 45} We recognize that the trial court was able to observe both the parties' counsel and the jury throughout the course of the trial. However, the reasons stated by the lower court for granting a new trial were based primarily on comments made during the trial,[3] the context of which is contained in the full transcript of those proceedings.

{¶ 46} This court has reviewed the entire record of the trial court's proceedings, including the trial transcript, which contains both defense counsel's comments and the response, or lack thereof,[4] by opposing counsel and the trial court. Upon consideration thereof, we find that defense counsel's comments, while decidedly zealous, were not so "outrageous" or "heinous" as to improperly prejudice or inflame the jury. Accordingly, we find that the trial court abused its discretion by finding that the jury's verdict was contrary to law and ordering a new trial on that basis. Rath's sole assignment of error is well taken.

{¶ 47} The judgment of the Lucas County Court of Common Pleas is hereby reversed, and the cause is remanded to the trial court for further proceedings consistent with this decision and judgment entry. Appellee is ordered to pay the costs of this appeal, pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

{¶ 48} Upon further consideration, we find that the first portion of our holding today is in conflict with the Eighth District Court of Appeals' decision in *Musca v. Chagrin Falls*, 3 Ohio App.3d 192, 3 OBR 219, 444 N.E.2d 475.[5] Accordingly, we sua sponte certify the record in this case for review and final determination to the Supreme Court of Ohio on the following issue: "Is a trial court required to give notice and a hearing before it may sua sponte order a new trial pursuant to the first paragraph of Civ.R. 59(D)?" Article IV, Section 3(B)(4) of the Ohio

---

3. In making its determination that a new trial was warranted, the trial court stated that it reviewed the file, the pleadings, and notes made during the trial, as well as relying on its own recollection of defense counsel's closing argument.

4. As set forth above, no timely objections were made during the course of the trial, either by plaintiff's counsel or the trial court.

5. Our decision as to the this issue is also in conflict with other decisions issued by the Eighth District Court of Appeals. See *Simons v. Simons* (May 27, 1982), 8th Dist. No. 44117, relying on *Musca*, supra. See, also, *Ruse v. Ruddy* (1972), 30 Ohio App.2d 171, 283 N.E.2d 818 and *Wood v. DiGeronimo* (July 26, 1979), 8th Dist. No. 37999, decided prior to *Musca*, in which the Eight District Court of Appeals concluded that notice and a hearing were preferable under Civ.R. 59(D), but stopped short of requiring the trial court to give notice and a hearing in all such cases.

Constitution; *Whitelock v. Gilbane Bldg. Co.* (1993), 66 Ohio St.3d 594, 596, 613 N.E.2d 1032.

Judgment reversed.

HANDWORK, J., and PIETRYKOWSKI, P.J., concur.