The STATE of Ohio, Appellee,

v.

POWELL, Appellant.

[Cite as *State v. Powell,* 177 Ohio App.3d 825, 2008-Ohio-4171.]

Court of Appeals of Ohio,
Fourth District, Athens County.

No. 07CA20.

Decided Aug. 11, 2008.

---

8. *Caruso–Ciresi, Inc. v. Lohman* (1983), 5 Ohio St.3d 64, 66, 5 OBR 120, 448 N.E.2d 1365.

9. Id.

Biddlestone, Winkelmann, Bradford & Baer Co., L.P.A., David J. Winkelmann, and William R. Biddlestone, for appellant.

C. David Warren, Athens County Prosecuting Attorney, and Patrick J. Lang, Assistant Prosecuting Attorney, for appellee.

KLINE, Judge.

{¶ 1} Kyla Powell appeals her felony complicity-to-escape conviction in the Athens County Common Pleas Court. On appeal, Powell contends that insufficient evidence supports her conviction. Because, after viewing the evidence in a light most favorable to the state, we can find that any rational trier of fact could have found all the essential elements of complicity to escape proven beyond a reasonable doubt, we disagree. Powell further contends that the trial court erred throughout the trial because it misinterpreted R.C. 2921.34(B). Because we interpret the "irregularity" defense referred to in R.C. 2921.34(B) to not include the method the officer used to detain Powell's friend, and because the trial court abused its discretion by limiting Powell's closing argument based, among other things, on its misinterpretation of R.C. 2921.34(B), we agree. Accordingly, we vacate Powell's conviction and sentence and remand this cause to the trial court for further proceedings consistent with this opinion.

I

{¶ 2} An Athens County Grand Jury indicted Powell for complicity to escape. She entered a not guilty plea, and the case proceeded to a jury trial.

### A. State's Version of Facts at Trial

{¶ 3} Officer Jeff Mayle arrested Matt Handa on a warrant out of Hocking County for two felonies (theft and breaking and entering). Officer Mayle transported Handa to the Glouster Police Department and sat him in a chair in front of a desk that was near the exit. Handa sent word to Powell that he was in police custody.

{¶ 4} Powell, as Handa's friend, drove to the police station despite having a suspended license. Upon arriving, she sat next to Handa, who had his hands handcuffed behind him. Officer Mayle walked to a file cabinet. As he retrieved some paperwork, he heard whispering. He looked around, and the whispering stopped. He turned back to the file cabinet and heard more whispering. He turned around to return to his desk.

{¶ 5} He then heard Handa tell Powell to go ahead and leave. She asked Handa if he was sure that he wanted her to leave. She further asked him if he wanted her to leave now. He said that he did.

{¶ 6} Powell then got up and headed for the door that was just a few feet away (two quick steps). She did not hug, kiss, shake hands, say goodbye, or say anything else to Handa. She turned the doorknob, opened the door and stopped while Handa quickly ran around her and out the opened door. The officer followed quickly behind Powell and chased after Handa. Powell drove her car behind the officer. He told her to return to the station and wait. She did not comply. Later that day, he arrested her as she rode as a passenger in a car driven by her grandmother.

## B. Defendant's Version of Facts at Trial

{¶ 7} Before the day of the escape, Powell went with Handa twice to turn himself over to the police so that he could begin serving an 11–month sentence stemming from convictions in Hocking County. On the day of the escape, Powell found out about Handa's arrest and that he wanted her to come pick up some of his belongings. As a result, she went to the police station to retrieve those items.

{¶ 8} When she arrived, Handa was sitting in a chair close to the door with his hands cuffed behind his back. Officer Mayle sat on the opposite side of a desk, about ten feet away from Handa. Powell sat next to Handa, about three feet from the door. Officer Mayle informed Powell that he had arrested Handa based on a new warrant faxed to him from Hocking County.

{¶ 9} Officer Mayle placed Handa's personal possessions on the desk and told Handa to tell Powell what he wanted done with them. Officer Mayle heard Handa tell Powell to take the money to his grandmother to pay for her gas bill.

{¶ 10} After seeking Officer Mayle's approval, Powell placed Handa's possessions in her purse. When Officer Mayle turned away to look for a copy of the warrant, Handa whispered to Powell for her to keep the money, rather than give it to his grandmother. Handa then told Powell to leave, which hurt her feelings. She asked him if he was serious. She gave Handa a hug, said goodbye, and walked two feet to the door.

{¶ 11} When Powell opened the door to leave, Handa raced out behind her, with Officer Mayle in quick pursuit. They both bumped her on their way out the door. Powell thought Officer Mayle would catch Handa because Handa was within an arm's reach. Powell watched the pursuit and wondered whether Officer Mayle would shoot Handa. She did not think Handa would get far because he was still wearing handcuffs.

{¶ 12} When she saw Officer Mayle cross a bridge, she drove to him to find out what she should do. He told her to go back to the police station and wait. She drove back and waited. However, when Officer Mayle did not return within five to ten minutes, she went to her grandmother's house and called her mother. She then called the Athens County Sheriff to see what she should do.

{¶ 13} An employee of the sheriff's office told her to return to the police station. As her grandmother started to drive her to the station, she got stuck on ice in the driveway. Officer Mayle then showed up and requested Powell to come with him, which she did.

{¶ 14} Back at the police station, Powell voluntarily called Handa's house in an attempt to help Officer Mayle locate him. She denied any involvement in the escape. After an unexpected phone call, she told Officer Mayle that Handa had spent some time at John Smathers' house and might be there. She was completely cooperative at the police station.

{¶ 15} After the day of the escape, Powell saw Handa outside his grandmother's house getting the mail. She had her mother call the police and report what she had seen.

## C. Closing Arguments

{¶ 16} During closing arguments, the state and Powell focused on Powell's intent, i.e., the element of "purposely." The state maintained that Powell purposely aided Handa's escape. The parties outlined the surrounding facts and circumstances that supported their views.

{¶ 17} The state contended that Powell was not credible. Powell argued that Officer Mayle was not credible. When Powell started to argue that the incompetent method Officer Mayle used to detain Handa was the motive for his lies or exaggerations, the state objected based on the court's prior interpretation of R.C. 2921.34(B). Powell proffered that because of his poor methods, Officer Mayle did not want the community to blame him for the escape. Instead, he wanted the community to blame Powell. After a long discussion outside the presence of the jury, the court sustained the objection and limited Powell's closing argument accordingly.

### D. Verdict, Sentence, and Appeal

{¶ 18} The jury returned a verdict of guilty as charged. The court accepted the verdict and sentenced Powell accordingly.

{¶ 19} Powell appeals her complicity-to-escape conviction and asserts the following six assignments of error: I. "The trial court erred by ruling that testimony and argument about Mayle's incompetence was barred by [R.C.] 2921.34(B)." II. "The trial court erred by refusing to allow relevant and probative testimony that would have aided the jury in determining [Powell's] state of mind and credibility." III. "The trial court's questioning of the appellant about prior criminal convictions related to alcohol and other offenses was plain error, highly prejudicial and deprived her of a fair trial." IV. "The appellant's conviction is based upon insufficient evidence." V. "The conviction is not supported by the manifest weight of the evidence." VI. "Cumulative error requires reversal of the jury's verdict."

### II

{¶ 20} We address Powell's fourth assignment of error out of order. She contends that the evidence is insufficient to support her conviction.

{¶ 21} The function of an appellate court, when reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith*, Pickaway App. No. 06CA7, 2007-Ohio-502, 2007 WL 357274, ¶ 33, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. See also *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶ 22} The sufficiency-of-the-evidence test "raises a question of law and does not allow us to weigh the evidence." *Smith* at ¶ 34, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Instead, the sufficiency-of-the-evidence test "gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Smith* at ¶ 34, citing *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. This court will "reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact." *Smith* at ¶ 34, citing *State v. Thomas* (1982), 70 Ohio St.2d 79,

79–80, 24 O.O.3d 150, 434 N.E.2d 1356; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

{¶ 23} Here, the state charged Powell with purposely aiding or abetting Handa's escape in violation of R.C. 2923.03(A)(2) and 2921.34(A)(1).

{¶ 24} R.C. 2923.03(A)(2) states, "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense."

{¶ 25} R.C. 2921.34(A)(1) states, "No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention."

{¶ 26} Powell claims that the evidence shows that she was merely present at the scene of a crime. Stated differently, she maintains that she did not purposely help her friend escape.

{¶ 27} "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). Generally, intent is not shown by direct testimony. *State v. Huffman* (1936), 131 Ohio St. 27, 5 O.O. 325, 1 N.E.2d 313, paragraph four of the syllabus. Instead, intent is shown by looking at the surrounding facts and circumstances. Id. See also *State v. Hillman* (Feb. 22, 2001), Franklin App. Nos. 00AP–729 and 00AP–756, 2001 WL 170585.

{¶ 28} Here, we find that the state presented sufficient evidence, if believed, to support the complicity-to-escape conviction. The officer testified that Powell appeared at the scene, whispered with her friend, stopped whispering when the officer turned around, asked her friend if he wanted her to leave, immediately opened the door that allowed her friend's sudden escape, followed the officer as he chased her friend, and failed to follow the officer's instruction to return to the station and stay there. Thus, we find that these surrounding facts and circumstances support a finding that Powell acted purposely, i.e., it was her specific intention to cause her friend's escape.

{¶ 29} Therefore, after viewing the evidence in a light most favorable to the state, we find that any rational trier of fact could have found the essential elements of the crime of complicity to escape proven beyond a reasonable doubt. Consequently, sufficient evidence supports Powell's conviction.

{¶ 30} Accordingly, we overrule Powell's fourth assignment of error.

## III

{¶ 31} The crux of Powell's contention in her first assignment of error is that the trial court made improper decisions during voir dire, the presentation of evidence, and closing arguments because it misinterpreted what comprises an "irregularity" defense in the context of R.C. 2921.34.

### A. Decision Excluding Evidence

{¶ 32} Powell contends, among other things, that the trial court erred when it excluded evidence about the method the officer used to detain her friend. The court excluded the evidence on the basis that the officer's method of detaining her friend supported an irregularity defense in violation of R.C. 2921.34(B).

{¶ 33} "A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant." *State v. Dunham*, Scioto App. No. 04CA2931, 2005-Ohio-3642, 2005 WL 1684674, ¶ 28, citing *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056; *State v. Hymore* (1967), 9 Ohio St.2d 122, 38 O.O.2d 298, 224 N.E.2d 126, certiorari denied (1968), 390 U.S. 1024, 88 S.Ct. 1409, 20 L.Ed.2d 281. "A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably." *Dunham* at ¶ 28, citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. "When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court." *Dunham* at ¶ 28, citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.

{¶ 34} R.C. 2921.34(B) states: "Irregularity in bringing about or maintaining detention * * * is not a defense to a charge under this section if the detention is pursuant to judicial order or in a detention facility."

{¶ 35} Here, the officer held Powell's friend under detention pursuant to a judicial order, i.e., a warrant. Therefore, the court held that Powell could not use an affirmative-irregularity defense. Thus, throughout the trial, the court would not allow the introduction or discussion of evidence that supported the irregularity defense.

{¶ 36} Powell agrees that R.C. 2921.34(B) prohibits her from using the irregularity defense. However, she claims that the method an officer uses to detain a defendant does not support an irregularity defense in the context of R.C. 2921.34(B). She maintains that the irregularity defense is not a valid reason to exclude evidence that the officer, among other things, failed to (1) lock the door,

(2) place Handa between himself and the door, (3) place Handa further from the door, (4) not position himself so that his desk was between him and Handa, and (5) not turn his back on Handa.

{¶ 37} Interpreting a statute is a question of law. "We review questions of law de novo." *State v. Elkins*, Hocking App. No. 07CA1, 2008-Ohio-674, 2008 WL 444633, ¶ 12, quoting *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 23.

{¶ 38} The legislature enacted R.C. 2921.34(B), at least in part, to negate the Supreme Court of Ohio's decision in *State v. Ferguson* (1955), 100 Ohio App. 191, 60 O.O. 166, 135 N.E.2d 884, which held that a person has a right to escape when he or she is unlawfully confined. *State v. Cross* (1979), 58 Ohio St.2d 482, 485–486, 12 O.O.3d 396, 391 N.E.2d 319, citing *State v. Procter* (1977), 51 Ohio App.2d 151, 158, 5 O.O.3d 309, 367 N.E.2d 908. Thus, in the context of revised R.C. 2921.34(B), a person unlawfully confined cannot now use the defense of irregularity in detention when the detention is pursuant to a judicial order.

{¶ 39} In *State v. Davis* (1992), 81 Ohio App.3d 706, 612 N.E.2d 343, we held that "the failure to handcuff [a defendant] prior to transporting him to the county jail does not constitute an irregularity in detention" under R.C. 2921.34(B) because a defendant is under "detention" when the officer arrests him and establishes control of him. Id. at 720, 612 N.E.2d 343, citing *State v. Reed* (1981), 65 Ohio St.2d 117, 19 O.O.3d 311, 418 N.E.2d 1359, syllabus. Thus, we concluded in *Davis* that a defendant can be under detention with or without physical restraint.

{¶ 40} In *In re Roux* (Aug. 24, 1998), Noble App. No. 238, 1998 WL 551990, an officer handcuffed the defendant to an eyebolt attached to a desk. After unscrewing the bolt, the defendant left the police station. The *Roux* court found that this method of detaining the defendant did not constitute an "irregularity" in the context of R.C. 2921.34(B).

{¶ 41} Here, as in *Davis* and *Roux*, we find that the officer's method of detaining Powell's friend did not constitute an irregularity in detention in the context of R.C. 2921.34(B). At trial, the state and Powell agreed that her handcuffed friend escaped. Thus, they implicitly agreed that the officer arrested her friend and established control over him. Therefore, we find that the trial court's stated reason for excluding the evidence is improper as a matter of law. Consequently, we find that when the trial court excluded evidence of the method the officer used to detain Powell's friend, it abused its discretion when it based its decision on its misinterpretation of R.C. 2921.34(B).

{¶ 42} As we stated earlier, Powell must show more than error. She must show material prejudicial error. However, the record shows that most of

the evidence in question was introduced into evidence. Apparently, it was admitted as background information. Therefore, we find that Powell has failed to show material prejudicial error as it relates to the "presentation of evidence" part of the trial.

## B. Decision Limiting Closing Argument

{¶ 43} Powell further contends that the trial court erred in closing arguments when it sustained the state's objection and refused to allow her to argue to the jury the officer's incompetent method of detaining her friend as the motive for the officer's lack of credibility. Powell states that even though she could not use irregularity as a defense, the court admitted into evidence most of the officer's method of maintaining her friend's detention. She maintains that the officer's poor method of or mistakes in detaining her friend led to his motive to lie or exaggerate what happened. She asserts that the officer did not want the community to blame him for the escape. Instead, he wanted the community to blame Powell.

{¶ 44} "The assessment of whether the permissible bounds of closing argument have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. Such determination will not be reversed on appeal absent an abuse of discretion." *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph three of the syllabus. See also *Pollard v. Hunt,* 164 Ohio App.3d 353, 2005-Ohio-5962, 842 N.E.2d 547, ¶ 13; *Byrd v. Baltimore & Ohio RR. Co.,* (1966), 10 Ohio App.2d 187, 195, 39 O.O.2d 376, 227 N.E.2d 252. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137, 566 N.E.2d 1181.

{¶ 45} Counsel may interrupt closing argument with an objection for a valid reason and no misstatement of the law. *State v. Stinson* (1984), 21 Ohio App.3d 14, 21 OBR 15, 486 N.E.2d 831. However, the trial court should accord trial counsel wide latitude in closing arguments. *Redlin v. Rath,* 171 Ohio App.3d 717, 2007-Ohio-2540, 872 N.E.2d 997, ¶ 44. Trial counsel may advocate and persuade to the limit of his or her ability and enthusiasm but cannot misrepresent evidence or go beyond the limits set by the trial court. *Hall v. Burkert* (1962), 117 Ohio App. 527, 529–530, 24 O.O.2d 322, 193 N.E.2d 167. Thus, counsel may freely discuss the facts, arraign the conduct of parties, *Messinger v. Karg* (1934), 48 Ohio App. 244, 1 O.O. 204, 192 N.E. 864, impugn, excuse, justify, or condemn motives according to the evidence, *Southard v. Morris* (C.P.1913), 31 Ohio Dec. 684, 1913 WL 1626, and attack the credibility of witnesses when the record supports the same. *State v. Givens,* Washington App. No. 07CA19, 2008-Ohio-1202, 2008 WL 699044, ¶ 32. The court should not be severe in arresting

argument on the ground that the argument or inference is illogical. *Southard,* supra.

{¶ 46} Here, we find that the trial court abused its discretion when it limited Powell's closing argument to the jury. The state objected during Powell's closing argument because of the irregularity defense. It felt that Powell's argument, i.e., the officer's poor method of detaining Powell's friend, supported that defense. However, Powell made it clear on the record that on the issue of credibility, she would show that the officer's poor method of detaining Powell's friend was his motive for lying and/or exaggerating. That is, he wanted the community to blame Powell and her friend, not him. Credibility and motive are proper issues for counsel to argue. Neither the trial court nor this court should usurp the province of the jury by passing on whether such an argument is persuasive. Therefore, the trial court abused its discretion when it did not allow Powell to argue the same.

{¶ 47} In addition, we find that the trial court's abuse of discretion prejudiced Powell. In closing argument, the record shows that one of the state's key arguments was that Powell lacked credibility. This case was a "he said/she said" case. Powell's friend Handa did not testify because the escape charge against him remained pending. Thus, the jury had to decide whether to believe the officer or Powell. Therefore, the court's decision to limit Powell's closing argument on the key issue of credibility prejudiced her.

{¶ 48} Accordingly, we sustain, in part, Powell's first assignment of error. We find Powell's remaining arguments and assignments of error moot and decline to address them. See App.R. 12(A)(1)(c). We vacate Powell's complicity-to-escape conviction and sentence and remand this cause to the trial court for further proceedings consistent with this opinion.

Conviction and sentence vacated
and cause remanded.

HARSHA, J., concurs separately.

McFARLAND, J., concurs.

HARSHA, Judge, concurring:

{¶ 49} Powell's primary defense was based upon her claim that Officer Mayle was exaggerating the nature of her conduct in an attempt to deflect attention from his own incompetence in allowing Handa to escape. In other words, she claimed that she did not assist Handa's escape from detention in any purposeful way and that Mayle was lying; and that he used the lies to excuse his own failure to follow proper protocol, which led to Handa's escape. The trial court incorrect-

ly interpreted Powell's strategy as an attempt to use an irregularity in obtaining or maintaining Handa's detention as an affirmative defense to the charge of complicity to escape. R.C. 2921.34(B) precludes using the presence of a legal irregularity in obtaining the detention of a suspect as a defense to a charge of escape (or complicity) if the detention is under a judicial order or in a detention facility. However, it does not preclude a defense that is based upon the sloppiness in protocol or improper procedure in maintaining the suspect in a secure environment. In other words, the "irregularity" protected by the statute is one based upon a legal flaw, like the lack of probable cause to believe the suspect committed a crime. See *State v. Harkness* (1991), 75 Ohio App.3d 7, 10, 598 N.E.2d 836. The statute does not insulate an officer's strategic failure to maintain physical custody of the suspect. *State v. Davis* (1992), 81 Ohio App.3d 706, 720–721, 612 N.E.2d 343.