[Cite as *State v. Woods*, 2015-Ohio-3950.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 13 MA 81 |
| VS. | ) | |
| | ) | OPINION |
| STEPHANIE WOODS | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from Youngstown
                             Municipal Court, Ohio
                             Case No. 12 CR B 2500 Y

JUDGMENT:                    Affirmed

APPEARANCES:
For Plaintiff-Appellee       Attorney Shelli Freeze
                             Assistant City Prosecutor
                             Youngstown City Prosecutor's Office
                             26 South Phelps Street
                             Youngstown, Ohio 44503

For Defendant-Appellant      Attorney Edward Czopur
                             The Commerce Building, Suite 346
                             201 East Commerce Street
                             Youngstown, Ohio 44503

JUDGES:

Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: September 28, 2015

DeGENARO, J.

{¶1} Defendant-Appellant Stephanie Woods appeals the judgment of the Youngstown Municipal Court convicting her of one count of assault and sentencing her accordingly. On appeal, Woods asserts that the trial court erred by calling two witnesses as court witnesses; that the court committed plain error by allowing an allegedly improper in-court identification of her as the defendant; that prosecutorial misconduct deprived her of a fair trial; and that the cumulative effect of the errors requires reversal and remand for a new trial.

{¶2} Woods' assignments of error are meritless. The trial court did not abuse its discretion by calling two witnesses as court witnesses pursuant to Evid.R. 614(A). Burroughs' in-court identification of Woods was not error, let alone plain error. The prosecutor made no improper remarks during closing arguments that prejudiced Woods. Finally, the cumulative error doctrine does not apply. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶3} On November 16, 2012, Woods was charged by complaint with one count of assault, R.C. 2903.13(A), a first-degree misdemeanor. She was accused of attacking Lanea Underwood outside of a club in downtown Youngstown on November 11, 2012. Two other women, Kayla Pegues and Shanay Jacobs, were also charged in connection with the incident. Jacobs was tried and found not guilty. During Kayla Pegues' trial, the prosecutor moved to dismiss the charge after no witnesses could identify Pegues.

{¶4} Woods was arraigned and pled not guilty, retained counsel and waived her speedy trial rights, and the case proceeded to a jury trial.

{¶5} At the beginning of trial, the State requested three subpoenaed witnesses be called as court witnesses pursuant to Evid.R. 614. Two of the three proposed witnesses were the co-defendants Pegues and Jacobs who had previously been tried for the same offense. Defense counsel objected, unless the trial court agreed to allow a continuance to transcribe the previous trials and allow counsel to read prior testimony and see exactly what they said. The trial court granted the

State's request, in part, and allowed two of the witnesses to be called as court witnesses, thus subjecting them to cross examination by both parties. In making its decision, the trial court reasoned: "As far as the co-defendants go, they are co-defendants. Their position is adverse to the State just by virtue of the fact that they are co-defendants."

{¶6}  After jury selection, the State called Roniesha Adams who testified that she went to a night club called Academy Club with victim, Lanea Underwood, and another friend, Stephanie Burroughs, where they stayed until it closed.  While leaving the club, Adams said she was called across the parking lot by Burroughs who indicated that Underwood was "getting jumped." Adams said when she arrived, she saw Underwood being "stomped on" and hit by four or five people but that she could not identify anyone, she could only see the backs of people's heads. Adams tried to pull people off of Underwood, but she started getting beaten herself in the process.

{¶7}  The victim's mother, Sharetta Stokes, testified Underwood went to the hospital for treatment of her injuries. She explained the extent of Underwood's injuries; she had taken photographs that night and the next day. These photographs were later admitted into evidence.

{¶8}  Stephanie Burroughs, a reluctant witness for the State because she was a friend of the women being accused and did not want to be involved, testified under subpoena that she was at her car when the fight began but did not see who was the initial aggressor. She then saw Woods, Drelynn and Shanay Jacobs fighting Underwood. Burroughs said she tried to pull people off of Underwood, but was unsuccessful. Burroughs confirmed that she had characterized the affray as Underwood "getting jumped" when calling Adams over to the scene. Burroughs said that when Adams came to help Underwood, she ended up in a separate splinter fight with Shanay and Drelynn Jacobs. Burroughs said she saw Woods about a month after the incident and Woods apologized for the fact that the fighting caused there to be blood in Burroughs' car.

{¶9}  The two court witnesses then testified; they were subject to cross-examination by attorneys from both sides. Shanay Jacobs testified that she exited the

club with Woods, walking several feet behind her, and tripped on some gravel. When she got up, she saw Underwood and Woods already on the ground fighting. She said she tried to pull Woods off of Underwood, but failed because Underwood had a hold of Woods' hair. Jacobs testified that Adams then came upon the fight and hit her, essentially making the situation worse.

{¶10} Kayla Pegues testified that she walked up to the fight between Underwood and Woods when it was already in progress. She said there was also a separate splinter fight going on by that time. Pegues said she tried to pull Woods off of Underwood, but was unsuccessful.

{¶11} Finally, the State called the victim, Lanea Underwood, to testify. Upon leaving the club that night, she was walking to Burroughs' car when she was punched in the head, from behind, by Woods. Underwood turned around and Woods struck her again, so she began to fight back. She noticed Shanay and Drelynn Jacobs in the vicinity of the fight, about two feet behind Woods.

{¶12} After Woods struck Underwood the second time, the two fell to the ground and Woods climbed on top of Underwood's chest and began to attack her while others were kicking, hitting and scratching her as well. Underwood hit Woods back and bit her leg to try to get Woods off of her. She said she lost consciousness at one point and someone finally helped her up to get in the car to leave the situation, when Woods attacked her again. Underwood testified about her injuries which included puncture wounds from high heeled shoes, scratches, bruising and swelling.

{¶13} Woods then testified that she acted in self-defense. Woods was leaving the club when Underwood deliberately hit her in the chest with her car door and called her a bitch. Underwood then hit Woods in the face and a fight ensued. Woods said she was defending herself. Woods admitted to punching Underwood in self-defense while Underwood had a hold of her hair and bit her and scratched her. Pegues came upon the fight and tried to pull her away, but Woods told Pegues to back away because Underwood was biting her at that time. Woods did not know if anyone, aside from her, struck Underwood. Photographs of Woods' injuries, which she said had been taken a week after the fact, were admitted into evidence.

{¶14} After considering all the evidence, the jury found Woods guilty of the assault charge. After the preparation and review of a pre-sentence investigation and a sentencing hearing, the trial court sentenced Woods to 60 days in jail and a $250.00 fine plus the costs of the action. The trial court stayed execution of her sentence pending appeal.

**Court Witnesses**

{¶15} In the first of four assignments of error, Woods asserts:

Appellant was denied a fair trial when the trial court erroneously called two witnesses as Court Witnesses.

{¶16} Woods claims that the trial court erred by calling co-defendants Jacobs and Pegues as court witnesses. Evid.R. 614(A) provides that "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." "A witness whose appearance is important to the proper determination of the case, but who appears to be favorable to the other party, is a principal candidate for application of Evid.R. 614(A)." *State v. Strong*, 10th Dist. No. 93AP-99, 1993 WL 342574, *2 (Sept. 7, 1993).

{¶17} It is within the sound discretion of the trial court to call individuals as witnesses of the court. *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980), paragraph four of the syllabus. "Abuse of discretion means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *State v. Dixon*, 7th Dist. No. 10 MA 185, 2013–Ohio–2951, ¶ 21.

{¶18} "It is well-established that a trial court does not abuse its discretion in calling a witness as a court's witness when the witness's testimony would be beneficial to ascertaining the truth of the matter and there is some indication that the witness's trial testimony will contradict a prior statement made to police." *State v. Schultz*, 11th Dist. No. 2003-L-156, 2005-Ohio-345, ¶29 (citing cases); *see also State v. Lather*, 171 Ohio App.3d 708, 2007-Ohio-2399, 872 N.E.2d 991, ¶3.

{¶19} The State had recently prosecuted the two witnesses, Jacobs and

Pegues, in connection with Underwood's assault. In deciding to characterize them as court witnesses the trial court reasoned: "As far as the co-defendants go, they are co-defendants. Their position is adverse to the State just by virtue of the fact that they are co-defendants." The trial court's decision was reasonable. Court witnesses under Evid.R. 614(A) can be utilized where, as here, the State can no longer vouch for a witness's credibility. *See State v. Curry*, 8th Dist. No. 89075, 2007-Ohio-5721, ¶17-18. This enables both parties to cross-examine the witness and the jury can determine her credibility. *Id.* Accordingly, Woods' first assignment of error is meritless.

### In-Court Identification of Defendant

**{¶20}** In her second assignment of error, Woods asserts:

Appellant was denied due process and a fair trial when the State improperly identified Appellant.

**{¶21}** Woods contends that State witness Stephanie Burroughs improperly identified her during trial. However, she failed to object during trial, thus she has waived all but plain error. Reversal based upon the plain error doctrine requires an obvious error that affected a defendant's substantial rights under exceptional circumstances. Crim.R. 52(B); *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). It cannot be utilized unless the outcome clearly would have been different if not for the error. *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996). Further, "plain error is a discretionary doctrine which may, *but need not*, be employed if warranted." (Emphasis sic.) *State v. Donald*, 7th Dist. No. 08 MA 154, 2009–Ohio–4638, ¶ 68.

**{¶22}** Burroughs testified she knew Woods, attended middle school with her, and saw her at several functions over the last ten years. She was then questioned as follows:

Q. When you got out of the car, who did you see involved in this fight?

A. It was Stephanie Woods, Drelynn Jacobs and Shanay Jacobs.

Q. Now, Stephanie Woods, is the Stephanie Woods that I am pointing to, is she one of the people involved in the fight?

A. Yes.

Q. The same Stephanie Woods you went to middle school with?

A. Yes.

{¶23} This identification was proper; the State was clarifying Burroughs' testimony to ensure she was speaking about the same Stephanie Woods. Burroughs identified Woods first by name after indicating that she knew Woods from attending middle school together. Thus, there is no error. Moreover, Woods was identified by several other witnesses, co-defendants Jacobs and Pegues, and then by the victim. Notably, Woods admitted to being involved in the altercation and striking Underwood. Thus, even if Burroughs' identification was problematic, there was no prejudice and therefore no plain error. Accordingly, Woods' second assignment of error is meritless.

### Prosecutorial Misconduct during Closing Arguments

{¶24}    In her third assignment of error, Woods asserts:

Appellant was denied a fair trial due to the State's repeated misconduct during closing argument.

{¶25} The test regarding prosecutorial misconduct in closing arguments is two-fold. A reviewing court must determine whether the remarks were improper, and if so, whether they prejudicially affected the substantial rights of the defendant. *State v. Treesh*, 90 Ohio St.3d 460, 464, 739 N.E.2d 749 (2001), citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). As this court has explained:

Parties have wide latitude in their closing statements, particularly "latitude as to what the evidence has shown and what inferences can be drawn from the evidence." *State v. Diar*, 120 Ohio St.3d 460, 2008–Ohio–6266, 900 N.E.2d 565, at ¶ 213. A prosecutor may state his opinion if it is based on the evidence presented at trial. *Id.* A prosecutor

may not state his personal belief regarding the credibility of a witness. *State v. Jackson*, 107 Ohio St.3d 53, 2005–Ohio–5981, 836 N.E.2d 1173, at ¶ 117. However, a prosecutor may comment upon the testimony of witnesses and suggest the conclusions to be drawn. *State v. Hand*, 107 Ohio St.3d 378, 2006–Ohio–18, 840 N.E.2d 151, at ¶ 116. A prosecutor may even point out a lack of credibility of a witness, if the record supports such a claim. *See State v. Powell*, 177 Ohio App.3d 825, 2008–Ohio–4171, 896 N.E.2d 212, at ¶ 45.

*State v. Wolff*, 7th Dist. No. 07 MA 166, 2009–Ohio–7085, ¶ 13.

**{¶26}** However, a prosecutor "may not make excessively emotional arguments tending to inflame the jury's sensibilities." *State v. Tibbetts*, 92 Ohio St.3d 146, 168, 749 N.E.2d 226 (2001). Prosecutors may not deliberately saturate trials with emotion and a conviction based solely on the inflammation of fears and passions, rather than proof of guilt. *State v. Keenan*, 66 Ohio St.3d 402, 409, 613 N.E.2d 203 (1993).

**{¶27}** Woods points to four statements made by the prosecutor during his closing argument that she alleges constitute prosecutorial misconduct. First:

[Prosecutor:] Now, I told you, remember who is on trial, Stephanie Woods is on trial. And I told you as I predicted that perhaps others would be placed on trial by the Defense. I felt like I was on trial at some point. Counsel kept on referencing that I was being clever or coy or that I had a hidden agenda. There was testimony that there was a trial against Kayla Pegues last week. Kayla testified herself and I proceeded to prosecute her but when my witness, Stephanie Burroughs, backed out of her identification, whether it be out of fear, friendship, who knows, what did I do, I moved to dismiss against her. Kayla Pegues told you that, I moved to dismiss because my job is the interest of justice. That's my job, not to win at all costs. Once the

evidence didn't show it I have a job to do. The law required that I move to dismiss and that's what I did.

**{¶28}** As Woods concedes in her brief, she failed to object to this comment during trial and therefore has waived all but plain error. This was not error, let alone plain error. This falls within the bounds of proper closing argument.

**{¶29}** Second, Woods takes issue with the following:

[Prosecutor]: Back to where I started, compare these pictures, their pictures are A through E, ours are one through nine, ours are the numbers, theirs are the letters. If it is not excessive force, if you can't figure out who started this, she [Woods] has to be found guilty.

[Trial Counsel]: Objection, You Honor, that's a misstatement of the law.

[Trial Court]: Overruled, its closing argument.

**{¶30}** "The prosecuting attorney does not instruct the jury on the law, the trial judge does." *State v. Palmer*, 7th Dist. No. 89-B-28, 1996 WL 495576, *12 (Aug. 29, 1996) aff'd, 80 Ohio St.3d 543, 687 N.E.2d 685 (1997). Accordingly, a prosecutor's misstatement of the law during closing arguments constitutes harmless error where the trial court correctly instructs the jury on the law. *State v. Nields*, 93 Ohio St.3d 6, 39, 752 N.E.2d 859 (2001). *See also State v. Glenn*, 28 Ohio St.3d 451, 455, 504 N.E.2d 701 (1986).

**{¶31}** To convict Woods of assault under R.C. 2903.13(A) the State must prove that Woods "knowingly cause[d] or attempt to cause physical harm to another[.]" *Id.* Woods contends that she acted in self-defense.

**{¶32}** "The elements of self-defense where [as here] the defendant is only alleged to have used non-deadly force are: (1) the defendant was not at fault in creating the situation giving rise to the affray, and (2) the defendant (even if mistaken) had a bona fide belief (which means a belief that was both objectively reasonable and subjectively honest) that he was in imminent danger of any bodily

harm (whether it be deadly or non-deadly)." *Struthers v. Williams*, 7th Dist. No. 07 MA 55, 2008–Ohio–6637, ¶ 13, citing *State v. Morris*, 7th Dist. No. 03MO12, 2004–Ohio–6810, at ¶ 21.

**{¶33}** It was undisputed that Woods caused physical harm to Underwood, she admitted as much. However, the prosecutor's statement—"[if] it is not excessive force, if you can't figure out who started this, she [Woods] has to be found guilty,"—is not an entirely accurate, or at least incomplete, statement regarding self-defense.

**{¶34}** However, the trial court gave the correct self-defense jury instruction:

> The Defendant is asserting an affirmative defense known as self-defense. The Defendant claims to have acted in self-defense. To establish that she was justified in using force not likely to cause death or great bodily harm the Defendant must prove by the greater weight of the evidence that she was not at fault in creating the situation giving rise to the physical contact and that she had reasonable grounds to believe and an honest belief, even if mistaken, that she was in immediate danger of bodily harm.
>
> In deciding whether the Defendant had reasonable grounds to believe and an honest belief that she was in imminent danger of bodily harm you must put yourself in the position of the Defendant with her characteristics, her knowledge or lack of knowledge and under the circumstances and conditions that surrounded her at the time. You must consider the conduct of Lanea Underwood and decide whether her acts and words caused the Defendant reasonably and honestly to believe that she was about to receive bodily harm.
>
> If the Defendant used more force than reasonably necessary and if the force used is greatly disproportionate to the apparent danger, then the defense of self-defense is not available.
>
> The burden of going forward with the evidence of self-defense and the burden of proving this affirmative defense are upon the

Defendant. She must establish such a defense by a preponderance of the evidence.

**{¶35}** The trial court went on to explain the meaning of the preponderance of the evidence standard, concluding that: "If the weight of the evidence is equally balanced or if you are unable to determine which side of an affirmative defense has the preponderance, then the Defendant has not established such affirmative defense."

**{¶36}** Further, during closing arguments, the prosecutor emphasized to the jury that it is the function of the trial court to instruct the jury on the law: "I stress to you that you need to follow the law that the Court is going to give you. The Court is going to tell you that, she is going to give you this law that she is going to go over with you before you go [to deliberate]. You will have it, you can read it, you will break it down. And you took an oath at the beginning of this trial * * * that you would follow the law and I am going to ask you to do that."

**{¶37}** And prior to the statement Woods complains about, the prosecutor had more clearly and accurately explained the law regarding self-defense:

So they're claiming self-defense. We went over, my burden of proof was to prove the assault. The Judge is going to go over the instructions of law with regard to self-defense. That's their burden, okay. They are acknowledging, she acknowledged it, that's their burden. They have to prove that she, Stephanie Woods, acted in self-defense. They have to prove that she, Stephanie Woods, acted in self-defense. They have the burden to show you that's what happened, not me. And the Judge is going to give you the law that [if] she [Woods] was not at fault in creating the situation giving rise to the contact and that she had reasonable grounds to believe, an honest belief even if mistaken[,] that she was in immediate danger of bodily harm.

* * *

And they have to prove to prove [self-defense] to you by the

preponderance of the evidence, 51 to 49, that's all. They just have to show you by the greater weight. If the weight of the evidence is equally balanced, they haven't met their burden.

\* \* \*

In addition, there is an element referencing excessive force. If the Defendant used more force than reasonably necessary and if the force used is greatly disproportionate to the apparent danger, then the defense of self-defense is not available.

**{¶38}** Thus, while the prosecutor perhaps made a slight misstatement of the law in saying "[i]f it is not excessive force, if you can't figure out who started this, she [Woods] has to be found guilty," it was harmless. *See Nields; Glenn, supra.*

**{¶39}** The third statement Woods takes issue with was made on rebuttal:

[Prosecutor]: Thank you, Your Honor. Here we go again, I am back on trial. The detective was even put on trial. I told you that would happen from the inception of this case. If I called the detective to the stand and asked him what were you told, counsel would have objected, hearsay. Anything- anybody told him would have been hearsay.

[Trial Counsel]: Objection, Your Honor, another misstatement of the law.

[The Court]: You guys, it's closing argument, the objection is overruled.

**{¶40}** With regard to the prosecutor's comments about being "back on trial," this was a reasonable response to comments made by defense counsel during his closing that "[the prosecutor] is a very good attorney and he is very good at, we call it obfuscating the law, we call it a sort of slight of hand, if we just say something often enough, but just a part of it, it will sound credible and authentic."

**{¶41}** Turning to prosecutor's statement about hearsay, this is an overgeneralization of the law, since there are hearsay exceptions and the

defendant's out-of-court statement to the detective would not have been considered hearsay. *See generally* Evid.R. 801-805. But parties are given wide latitude in closing statements. *See Wolff* at ¶13, *supra.* Accordingly, this was not improper. Even if it was, it does not prejudicially affect the substantial rights of the defendant so as to rise to the level of prosecutorial misconduct.

**{¶42}** Fourth and finally, Woods takes issue with the following statement:

> [Prosecutor, later in rebuttal]: If you believe in the alternative that you don't know how this started, their burden. Some of you may believe that I don't know how this started. Guess what, their burden. She [Woods] is saying she was involved in the fight. She [Woods] is saying she hit her, their burden. You have to find her guilty. If you're unsure as to how this started, if it's a scenario where you don't know if she [the complainant] is telling the truth or she [Appellant] is telling the truth, remember, their burden. The law says that. The burden of going forward with regard to self-defense is on the Defense. You can't figure it out, guilty. If you think it's an equal balance, they are both equally at fault, same thing, guilty. You will have the law. That's what preponderance is. If you can't walk out of that room, if you think Lanea [Underwood, the complainant] started this, hit her first, that's the only way you can find Stephanie Woods not guilty. If you are unsure or you think they are both equally balanced, this is criminal court. You said you would follow the law. I ask you to read the law. Some of you may think you're unsure. Some of you think there is equal balance, equal blame. Guess what, still guilty. It doesn't make a difference how you reach you conclusion.
>
> [Trial Counsel]:  Objection for the record, Your Honor.
>
> [Trial Court]:  Overruled.

**{¶43}** These comments were not improper. The prosecutor was emphasizing that the burden to prove self-defense rests with the defendant. The prosecutor noted

that the trial court would be instructing the jury on the law. And again, the trial court's jury instructions regarding the assault charge, burdens of proof and self-defense were proper and thus would cure any misstatement of the law by the prosecutor.

{¶44} In sum, none of the statements rise to the level of prosecutorial misconduct. Even assuming arguendo they were improper, it was not prejudicial. Accordingly, Woods' third assignment of error is meritless.

### Cumulative Error

{¶45} In her fourth and final assignment of error, Woods asserts:

The cumulative effect of the errors outlined above denied Appellant of a fair trial.

{¶46} Under the doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the errors does not individually constitute cause for reversal. *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995). However, the doctrine of cumulative error is inapplicable when the alleged errors are found to be harmless or nonexistent. *Id.*; *State v. Brown*, 100 Ohio St.3d 51, 2003–Ohio–5059, 796 N.E.2d 506, ¶ 48. Because the other three assignments of error are meritless, the cumulative error doctrine does not apply. Accordingly, Woods' final assignment of error is meritless.

{¶47} In sum, all of Woods' assignments of error are meritless. The trial court did not abuse its discretion by calling two witnesses as court witnesses pursuant to Evid.R. 614(A). Burroughs' in-court identification of Woods was not plain error. The prosecutor made no improper remarks so as to prejudice Woods. Finally, the

cumulative error doctrine does not apply. Accordingly, the judgment of the trial court is affirmed.

Waite, J., concurs

Robb, J., concurs